LUMBERMENS MUTUAL CASUALTY COMPANY *vs.* ROBERT A. DeCENZO, individually and as administrator. October 31, 1984. *Insurance,* Motor vehicle insurance, Uninsured motorist.

The question in this case is whether an insured may "stack" the coverage for bodily injury caused by an underinsured motorist under separate motor vehicle liability insurance policies covering three different automobiles. The Superior Court judge who heard the case without jury ruled that he could not, and, relying on *Royal Indem. Co.* v. *Blakely,* 372 Mass. 86 (1977), and *Nissenbaum* v. *Liberty Mut. Ins. Co.,* 16 Mass. App. Ct. 996 (1983), we affirm.

In 1979 Robert A. DeCenzo owned three automobiles each of which was covered by Massachusetts automobile insurance policy issued by Lumbermens Mutual Casualty Company (Lumbermens). Each of the policies provided optional underinsured motorist coverage of up to $25,000 per

person for the policy owner and any member of his household. Identical premiums were paid for the three policies. On February 23, 1979, DeCenzo's son, a member of his household, was killed while a passenger in an underinsured motor vehicle, not one of the three owned by his father. The underinsured vehicle was covered by a policy with an insurer other than Lumbermens.

Lumbermens brought this action against DeCenzo, individually and as administrator of his son's estate, seeking a declaration that the insured was not entitled to "stack" the coverage on the three motor vehicles and that the company's liability for the accident was limited to $25,000. DeCenzo filed a counterclaim seeking payment of $75,000.

Other than the meaning of the language used in the policy relating to multiple coverage, the only unresolved question at trial was which of two forms of the Massachusetts automobile insurance policy, the 1978 edition or the 1979 edition, governed the rights of the parties. The operative language of the 1978 policy provided as follows: "(1) Sometimes two or more auto policies cover the same accident. If all the policies are with us, the most we will ordinarily pay is the highest dollar amount in any one policy. . . ." The trial judge ruled that even under the 1978 policy, the operative language of which on this point was less favorable to the insurance company than the language in the 1979[1] policy, DeCenzo was entitled to recover only $25,000.

DeCenzo makes two arguments on appeal. First, he contends that the separate premium of $14 paid for the optional underinsured coverage on each of the policies entitled him to a multiple recovery. Even if we assume that DeCenzo is correct in his assertion that his payment of additional premiums for underinsured motorist coverage for the second and third vehicles yielded him no significant additional benefits, that does not permit him a multiple recovery. A similar argument made in the *Nissenbaum* case did not succeed. Moreover, at trial there was undisputed testimony from the senior legal counsel with the Division of Insurance that the premium would have been the same for one policy covering the three vehicles as for the three separate policies. Had he purchased one policy covering the three vehicles, it is clear under the policy's terms that the coverage would have been limited to $25,000 regardless of the number of automobiles covered or the amount of the premium paid.

Secondly, DeCenzo argues that the policy language prohibiting "stacking" did not apply because all of the policies relating to the accident were not with Lumbermens. This is so, he says, because the policy covering the underinsured automobile in which the deceased was travelling was insured

---

[1] The equivalent language of the 1979 policy provided as follows: "You may have two or more auto policies with us covering the same claim. In that case, the most we will pay is the highest amount payable under the applicable coverage in any one of those policies."

by another carrier. The interpretation urged by DeCenzo is not a reasonable one. Underinsured coverage always involves another policy and, almost always, another insurance carrier. It would be an anomaly to have the question of one's right to a multiple recovery turn on whether the underinsured coverage and the claimed coverage happened to be with the same insurance company. Clearly, the words "if all of the policies are with us" refers to all of the policies except the one on the vehicle which is underinsured.

If we were to regard the policy language as ambiguous, the ordinary rule of construction would require us to interpret it strictly against the insurer. *Slater* v. *United States Fid. & Guar. Co.,* 379 Mass. 801, 804 (1980). The circumstances might require some departure from the ordinary rule since the trial judge found that the Division of Insurance wrote the policy and the Commissioner approved it (G. L. c. 175, § 113A). Thus, the situation could well be analogous to a legislative enactment incorporating policy terms where the rule of strict construction against an insurer is not applicable. *Wilcox* v. *Massachusetts Protective Assn.,* 266 Mass. 230, 235 (1929). *MacBey* v. *Hartford Acc. & Indem. Co.,* 292 Mass. 105, 108 (1935). *Bilodeau* v. *Lumbermens Mut. Cas. Co.,* 392 Mass. 537 (1984). To decide whether to depart from the rule of strict construction in such a case, we would have delved into the approval process to determine the extent to which the State officials were representing the interests of insurance consumers and the degree of their interaction with the insurance companies. We do not have to reach that issue, however, because considering the policy as a whole, and giving the words contained therein their usual and ordinary significance, we find the meaning of the provision clear in this case. Lumbermens need pay no more than $25,000.

*Judgment affirmed.*

*Paul D. DeCenzo* for the defendant.
*D. Alice Olsen* for the plaintiff.